**AMERICAN PETROFINA, INCORPORATED and Canadian Petrofina Limited, Plaintiffs,**

**v.**

**Joseph MAURO, Jr., Barry Lipsitz and Hi-Octane Co., Inc., Defendants.**

**Civ. No. 8520.**

United States District Court
W. D. New York.
May 20, 1960.

of the United States, Title 15 U.S.C.A., Chapter 22; (2) under the General Business Law of the State of New York, Article 24; (3) under the common law; and in addition, (4) insofar as plaintiff, Canadian Petrofina Limited ("Canadian Petrofina") is concerned, under the International Convention for the Protection of Industrial Property of 1883, as revised at Brussels in 1900, at Washington in 1911, at The Hague in 1925 and at London in 1934, and ratified by Canada and by the United States. Jurisdiction is founded on Title 15 U.S.C.A. § 1121 and Title 28 U.S.C. § 1338, and in addition, insofar as Canadian Petrofina is concerned, jurisdiction is founded on Title 28 U.S.C., Sections 1331 and 1332(a) (2).

Plaintiffs have moved for a preliminary injunction in accordance with the prayer of the complaint. The court has reviewed the pleadings, briefs of counsel, affidavits, and depositions, together with the annexed exhibits, and on the entire record, as constituted on February 29, 1960, the date of hearing of this application, makes the following findings of fact and conclusions of law.

### Findings of Fact

#### The Parties

1. Plaintiff American Petrofina, Incorporated ("American Petrofina") is a Delaware corporation with its principal place of business in New York City. Plaintiff Canadian Petrofina Limited ("Canadian Petrofina") is a Canadian corporation with its principal place of business in Montreal.

2. Defendant Hi-Octane Co. Inc. ("Hi-Octane") is a New York corporation whose principal place of business is at 581 Genesee Street, Buffalo, New York. Defendants Joseph Mauro, Jr. and Barry Lipsitz are both citizens of New York, residing in Erie County, and are the sole officers and stockholders of defendant Hi-Octane.

#### Expansion of "Fina" in Canada

3. American Petrofina and Canadian Petrofina are affiliated through Petrofina.

Hodgson, Russ, Andrews, Woods and Goodyear, Buffalo, New York (Rynn Berry, 20 Exchange Place, New York, New York, of counsel), attorneys for Plaintiffs.

Abe Roth, Buffalo, New York, attorney for Defendants.

HENDERSON, District Judge.

This is an action for trademark infringement and unfair competition brought (1) under the Trademark Laws

S. A. ("Belgian Petrofina"), a Belgian corporation, which owns substantial percentages of the stock of both companies.

4. In 1953 Belgian Petrofina organized Canadian Petrofina for the purpose of extending to the Western Hemisphere the marketing of "Fina" petroleum products previously marketed abroad under the "Fina" name and mark.

5. Beginning in 1953 Canadian Petrofina has rapidly expanded its "Fina" business in Canada. At the end of December 1958, before defendants made any use of "Fina," Canadian Petrofina had 1,569 "Fina" gas stations in Canada, which had sold more than ½ billion gallons of "Fina" gasoline, 5,650,000 gallons of "Fina" lubricating oils, 4,900,000 pounds of "Fina" grease and 498,000 gallons of "Fina" antifreeze. Total net sales of "Fina" products through December 1958 exceeded $160,000,000 Canadian; and during that period Canadian Petrofina had invested more than $2,000,000 in "Fina" advertising.

Expansion of "Fina" in the United States

6. As part of a program projected in 1954 for the marketing of "Fina" products in the United States on a national basis, steps were taken to protect the "Fina" name and mark throughout the United States, by federal registration of the "Fina" trademark and by formation of a "Fina" name-saving corporation, which was qualified to do business in areas of prospective expansion of "Fina" business, including the State of New York.

7. In April 1956 American Petrofina was organized for the marketing of "Fina" products on a nationwide basis. American Petrofina commenced business as an operating company, with headquarters in New York City, on October 1, 1956.

8. Since the opening of its first "Fina" gas station in 1957, American Petrofina has expanded the marketing of "Fina" products into new territories. At the end of 1958, and before defendants had used "Fina" at all, there were 1,202 "Fina" gas stations in operation, located in nine states, namely, Arkansas, Iowa, Kansas, Nebraska, New Mexico, Louisiana, Missouri, Oklahoma and Texas. At the end of December 1959 there were 1,704 "Fina" gas stations in operation in 13 different states, including new marketing territories in the States of Illinois, Minnesota, South Dakota and Wisconsin.

9. By the end of 1959 American Petrofina had sold more than 353,000,000 gallons of "Fina" gasoline, more than 1,000,000 gallons of "Fina" motor oils and more than 1,000,000 pounds of "Fina" grease, total net sales of "Fina" products amounting to approximately $43,000,000. During that period American Petrofina invested over $800,000 in "Fina" advertising.

10. American Petrofina is continuing the expansion of its "Fina" business with the ultimate objective of achieving nationwide distribution of "Fina" products.

Federal Registrations of "Fina"

11. American Petrofina owns four federal registrations of the "Fina" mark for petroleum products on the Principal Register of the 1946 Trademark Act, and is the owner of the goodwill of the business associated with the "Fina" mark of the registrations, as follows:

| Number | Issue Date |
|---|---|
| 620,240 | January 31, 1956 |
| 664,285 | July 15, 1958 |
| 673,746 | February 10, 1959 |
| 674,437 | February 24, 1959 |

12. All four "Fina" registrations were published for opposition purposes in the Patent Office Official Gazette prior to defendants' first use of "Fina," and before defendants' adoption of "Fina" they had "constructive notice of the registrant's claim of ownership thereof."

13. Each of American Petrofina's four registrations on the Principal Register of the 1946 Act is "prima facie evidence of the validity of the registration, registrant's ownership of the mark, and of registrant's exclusive right to use the mark in commerce in connection with the

goods * * * specified in the certificate * * *." 15 U.S.C.A. § 1057(b).

### "Fina" in New York State

14. "Fina" has been used continuously since 1954 on grease and oil produced for Canadian Petrofina in North Tonawanda, New York. More than 5,000,000 pounds of grease and oil bearing the "Fina" mark have been shipped into Canada from North Tonawanda. Substantial quantities of oil in drums bearing the "Fina' mark have been shipped from North Tonawanda to the Petrofina companies in Belgium and the Belgian Congo since 1956.

15. "Fina" highway billboards have been maintained by Canadian Petrofina continuously since 1956 on main highways of New York State on the approaches to the Canadian border, including one "Fina" billboard on Niagara Falls Boulevard (U. S. highway 62, N. Y. 18), and another on U. S. highway 20 (N Y. 78) approaching Buffalo.

16. The introduction and growth of plaintiffs' "Fina" business in the United States and Canada have been widely publicized in trade journals and in business and financial publications with large circulations in the State of New York; "Fina" has been regularly advertised in media reaching the Niagara frontier area of New York, including radio and television broadcasts and trade publications.

17. "Fina" has been made known to large numbers of tourists visiting Canada from New York State by means of "Fina" highway and point-of-sale advertising and through substantial sales of "Fina" products at Canadian "Fina" stations. "Fina" goodwill in the State of New York, and elsewhere in the United States and Canada, is shared by plaintiffs through a system of interchangeable "Fina" credit cards, of which Canadian Petrofina has outstanding 102,819 and American Petrofina, 102,643.

18. As of December 31, 1958, Canadian Petrofina had approximately 640 shareholders in the State of New York. As of December 31, 1959, American Petrofina had approximately 1,200 shareholders in the State of New York. Both companies' securities are listed on the American Stock Exchange in New York and are traded throughout the state.

19. The "Fina" name-saving company, United Fina Corporation, has been a wholly-owned subsidiary of American Petrofina and a corporation in good standing in the State of New York since 1956.

20. American Petrofina has had its principal office in New York since 1956, and since 1957 the operation of all "Fina" gas stations and the marketing of all "Fina" products in the United States have been directed from the Company's executive offices in New York City. American Petrofina has paid the State of New York substantial franchise taxes on all business carried on by the Company under the "Fina" name and mark.

### Defendants' Use of "Fina"

21. Defendants Mauro and Lipsitz organized the defendant Hi-Octane in June 1958 and began operating a gas station under the "Hi-Octane" name on Genesee Street (N. Y. highway 33), Buffalo, in August 1958. "Hi-Octane" was the only name and mark used by defendants until some time in 1959.

22. Defendants made no use of "Fina" prior to 1959.

23. "Fina" is a fanciful, arbitrary mark that has no connection with the oil business except as it identifies plaintiffs, and no connection with defendants except for their claim that they adopted "Fina" in memory of a deceased uncle of defendant Lipsitz, who had used "Fina" at one time in a vegetable business in Brooklyn.

24. On May 29, 1959, defendants obtained New York State trademark registration No. R–4441 for "the word 'Fina' enclosed in a diamond," "used in connection with lubricating oils and gasolines."

25. In or about June 1959 defendants opened a second "Fina" station on Niagara Falls Boulevard (U. S. highway 62, N. Y. highway 18), Tonawanda, New York. In November of 1959 the individual defendants herein purchased a

·third location at Germania and South Park (N. Y. highway 240), Buffalo. Defendants have discussed the possibility of utilizing this property for a gas station.

26. Defendants are using "Fina" in interstate and U. S.-Canadian commerce, and in intrastate commerce that substantially affects plaintiffs' business in commerce. Substantial quantities of defendants' "Fina" gas and oil cross the Canadian border and the New York-Pennsylvania border in the cars of defendants' customers. All of the oil sold at defendants' "Fina" stations is bought from United Oil Manufacturing Company of Erie, Pennsylvania, and delivered by United in cans bearing the "Fina" mark that are shipped across the Pennsylvania-New York line.

27. Defendants Mauro and Lipsitz own and control the corporate defendant and have personally participated in and supervised the use of "Fina."

Competition Between Defendants' "Fina" Gas Stations and the "Fina" Gas Stations of Canadian Petrofina

28. Large numbers of cars enter and leave Canada by the highways on which defendants' "Fina" stations are located.

29. The competitive territory of a gas station covers a wide area, particularly gas stations like defendants', situated on main highways that handle large volumes of tourist and other through traffic. Every car on the highway passing a gas station is a potential customer. Stations located within the distance that a car can drive on a tank of gas compete directly for customers, the intensity of competition increasing with station-to-station proximity.

30. Defendants' "Fina" stations are in the same competitive area as more than 300 "Fina" stations of Canadian Petrofina. Defendants' "Fina" station on Genesee Street, Buffalo, is less than six miles from two "Fina" stations of Canadian Petrofina in Fort Erie; half a gallon of gas or less would be consumed in driving between the rival stations.

31. By highway billboards, radio, television and a variety of other advertising media, through the patronage of motorists traveling between New York and Ontario, and by word of mouth, the reputation of plaintiffs' "Fina" stations and "Fina" products was established in New York years before defendants adopted "Fina."

32. The Niagara frontier areas of New York and Ontario are not "separate and remote" competitive areas. With regard to traffic passing across the international boundary, they are for all practical purposes in the same market area.

Confusion

33. Concurrent use of the same name and mark for the same business and products in the same competitive area has caused confusion and deception of the purchasing public.

34. Purchasers have been misled into thinking that defendants' "Fina" stations are operated by or affiliated with plaintiffs. Canadian Petrofina has received a complaint and damage claim for unsatisfactory service at defendants' Genesee Street "Fina" station; and defendants have refused to honor plaintiffs' "Fina" credit cards at their "Fina" stations.

35. Defendants' advertising of their "Fina" gas as "Cut Rate," "Major-Brand" and "Nationally Advertised" tends to mislead the public into thinking that defendants are selling plaintiff's "Fina" gas at a cut-rate price.

36. Defendants' use of "Fina" has caused and is likely to cause confusion of purchasers and damage to plaintiffs' "Fina" business and goodwill, and in addition threatens to foreclose an important area of prospective expansion for ·the "Fina" marketing activities of American Petrofina.

Balance of Convenience

37. Plaintiffs have been diligent in seeking relief against defendants' use of "Fina."

38. Defendants' investment in "Fina" is insignificant compared to plaintiffs', and at the time defendants were notified

of infringement their "Fina" business was less than eleven months old.

39. Many suitable names that are not already identified with established companies in the oil business can be used for defendants' business, including the corporate defendant's charter name, "Hi-Octane", which defendants used as their only name and mark for some five months before they adopted "Fina".

40. For defendants to change their name or revert to using "Hi-Octane" as their sole name will be no hardship. Continued use of "Fina" at defendants' stations will be harmful to the major investment that plaintiffs have made to create and expand their "Fina" business in North American markets.

41. The amount in controversy, exclusive of interest and costs, exceeds $10,000.

## Conclusions of Law

1. This court has jurisdiction over the parties to and the subject matter of this action.

2. American Petrofina is the owner for the United States of the goodwill associated with the "Fina" mark and name for gas stations, petroleum products and products and services customarily sold and rendered at gas stations.

3. American Petrofina's rights to "Fina" in the oil business throughout the United States, including the State of New York, are prior and superior to any claimed by defendants.

4. Defendants have infringed American Petrofina's rights in its federal trademark registrations of "Fina" and American Petrofina's common law rights in the "Fina" mark and name.

5. Defendants' use of the "Fina" mark and name in connection with their gas stations and the sale of petroleum products constitutes unfair competition with plaintiffs.

6. Plaintiffs' business interests have been damaged, and plaintiffs' valuable goodwill associated with the "Fina" mark and name is seriously threatened.

7. The harm to plaintiffs and the public cannot be adequately compensated for by money damages, and failure to grant an injunction at this time would result in irreparable injury.

8. Plaintiffs are entitled to a preliminary injunction, restraining defendants, the agents, servants, employees, attorneys of defendants, or of any of them, and those acting in privity or in concert with them, or with any of them, pending the determination of this action, from

(a) continuing to carry on business under the name "Fina," or under any name which includes "Fina" or any such near resemblance thereto as may be likely to cause confusion or mistake or to deceive purchasers;

(b) marketing, distributing, selling, offering for sale or advertising any product or services under or bearing the mark "Fina" or any colorable imitation thereof;

(c) using on any sign, label, pump, package, container, wrapper, receptacle, stationery, advertisement or otherwise the word "Fina" or any colorable imitation thereof;

and directing the defendants to file with the court and serve on the attorneys for plaintiffs within 30 days after the service on the defendants of such injunction, a report in writing under oath setting forth in detail the manner and form in which the defendants have complied with the injunction; provided that plaintiffs first give security in the sum of $2,500 for the payment of such damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined.